IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

UNITED STATES for the use of
QUALITY TRUST, INC.,

            Plaintiff,

Vs.                                      No. 04-4157-SAC

CAJUN CONTRACTORS, INC.,
d/b/a CAJUN CONSTRUCTORS,
INC., and LIBERTY MUTUAL
INSURANCE COMPANY,

            Defendants.

MEMORANDUM AND ORDER

The case comes before the court on the following motions: the motion to enforce settlement agreement or, alternatively, for default judgment (Dk. 116) filed by the defendants, Cajun Contractors, Inc. ("Cajun") and Liberty Mutual Insurance Company (collectively "defendants"); the motion for reconsideration (Dk. 118) purportedly filed by the plaintiff but signed only by Lawrence M. Ruiz in a *pro se* capacity; the defendants' motion to strike (Dk. 119) the plaintiff's motion for reconsideration (Dk. 118); and the motion to strike (Dk. 122) filed by Lawrence M. Ruiz in his *pro se* capacity. Now that these matters have been fully briefed and the research completed, the court files this order as

its final ruling.

## BACKGROUND

The plaintiff Quality Trust, Inc. ("QTI") filed this action alleging, *inter alia*, that the defendant Cajun as the general contractor of a wastewater facility project at Fort Riley, Kansas, breached a subcontract that called for QTI to erect eight metal buildings. The plaintiff QTI alleged that Cajun unreasonably delayed in providing the concrete pads and metal buildings, demanded that QTI erect the buildings within an unreasonably short period of time, wrongfully terminated the contract, and refused to pay the plaintiff accordingly. The defendant Cajun counterclaimed alleging various deficiencies with QTI's work, including its timeliness and quality.

Both sides filed their respective motions for summary judgment which the court decided in a lengthy written order. (Dk. 98). The court denied the plaintiff's motion in its entirety and denied the defendants' motion on some of the plaintiff's claims but granted the motion on the plaintiff's other claims and on Cajun's counterclaim. Neither party filed a motion to reconsider this order within the allowed ten-day period. D. Kan. Rule 7.3. The plaintiff's claims remaining for trial were the Miller Act claims for payment under the contract and, alternatively, for quantum meruit, and

the common-law breach of contract claim for unnecessary and unreasonable delays and interference with performance. (Dk. 98, p. 39).

On May 29, 2007, the court conducted the pretrial status conference at which time Mr. Seaton, the plaintiff's counsel, asked to withdraw from the case and moved for a continuance of the trial. The court granted counsel's oral request to withdraw but directed counsel to file a written motion in compliance with local rule. The court also granted the motion to continue the jury trial in order for the plaintiff corporation to secure new legal representation. The court further set the matter down for a settlement conference in front of the magistrate judge. (Dk. 103).

The magistrate judge conducted a telephone conference on June 7, 2007, and thereafter scheduled the settlement conference for July 5, 2007. (Dk. 111). The magistrate judge commenced the settlement conference on July 5th, but after consulting with the parties he directed that further settlement proceedings occur on July 24th. The magistrate judge also directed that counsel for plaintiff enter their appearance on or before July 23, 2007. (Dk. 114, Minute Entry). The docket sheet reflects that no counsel entered an appearance for the plaintiff as directed but that the settlement conference was held on July 24th, and the case was settled.

(Dk. 115, Minute Entry).

The transcript of the settlement proceedings held on July 24th was filed on September 24, 2007, and establishes the following to have occurred. (Dk. 123). The magistrate judge opened the conference with an entry of appearances, and counsel, Richard Miller entered his appearance for the plaintiff. (Dk. 123, p. 2). The magistrate judge noted that Lawrence Ruiz was also present for the plaintiff. *Id.* After defendants' counsel entered their appearances, there was a brief exchange between counsel, and the magistrate judge then went off the record to conduct the settlement conference. (Dk. 123, pp. 2-5). The transcript next reflects that a settlement was reached and confirmed by the following exchange:

> THE COURT: The Court calls the case of United States for the use of Quality Trust, Incorporated, versus Cajun Contractors, Incorporated, Case No. 04-4157. For the record, could I have the appearances, please.
> MR. MILLER: Richard Miller, attorney for Quality Trust, and Mr. Larry Ruiz is present in the courtroom.
> THE COURT: All right.
> MR. HOFFMAN: And Robert Hoffman on behalf of Defendant Cajun Contractors and Liberty Mutual, and Gray Sexton for Cajun Contractors.
> THE COURT: Very well. It's my understanding that the parties have reached a settlement regarding this matter. I've been informed of the terms of the settlement, which I will recite at this time and ask for both counsel and the parties to acknowledge their understanding of the terms of this settlement, which will be reduced to writing.
> It's my understanding that the Defendant has offered to settle

this claim and the Defendant-- and the Plaintiff has agreed to accept on the following terms: That the Defendant will abandon its claim as it relates to the judgment that it's received as a result of a partial grant of summary judgment in this case in the amount of something in excess of $26,000, plus interest accrued to date. In addition, the Defendant will abandon its claim for any attorney's fees as it may relate to the Miller Act claim that was pending in this case.

In addition, the Plaintiff shall receive payment from the Defendant in the amount of $5,000. And in addition, the Defendant is waiving any and all claims and further obligations of the Plaintiff with respect to any warranties concerning the work provided by the Plaintiff related to this case. There will be a full and complete mutual release of both parties concerning these claims, as well as any claims against their agents, officers, or employees.

There will be no confidentiality provision with regard to this settlement, and it is anticipated that this agreement shall be completed in writing, signed, and any payment to be made within ten business days of today.

Mr. Miller, is that your understanding of the nature of this settlement?

MR. MILLER: Yes, Your Honor. But it is my understanding that they are waiving all claims as to performance, not just warranties, but as to the performance of the work by Quality on this project.

THE COURT: Is that correct, Mr. Hoffman?

MR. HOFFMAN: Yes, that is.

THE COURT: All right, very well. Then that will be reflected, I assume, in any formal settlement papers.

MR. HOFFMAN: And you may have included it or intended to include it, but--but both parties to bear their own costs and expenses, in addition to their own attorney's fees.

THE COURT: Yes. Excuse me for not mentioning that out loud. Mr. Ruiz, is that your understanding and do you accept this settlement in this case?

MR. RUIZ: Yes, Your Honor.

THE COURT: Mr. Hoffman, on behalf of your clients, is that your understanding of the settlement that's been reached between the parties?

MR. HOFFMAN: Yes, it is, Your Honor.

> THE COURT: And, Mr. Sexton, is that your understanding and agreement to accept on behalf of your client?
> MR. SEXTON: Yes, Your Honor.
> THE COURT: Very well. I want to thank the parties for their willingness to not only initially engage in mediation but endure me and to endure a second session where we came back together today.
> I would ask that defense counsel please notify Judge Crow that we have reached a settlement in this case, because I know he's anticipating your appearance there. In fact, his office called over just before we started this hearing at this time to see where we were.
> Is there anything further we need to take up on behalf of the Plaintiff today, Mr. Miller?
> MR. MILLER: No, Your Honor, except to thank you for all your indulgence in moving this to a settlement. Appreciate it very much.
> THE COURT: Not at all.
> MR. MILLER: Very good job.
> THE COURT: You're welcome.
> MR. RUIZ: Same here, Your Honor. Thank you very much--
> THE COURT: Thank you, Mr. Ruiz.
> MR. RUIZ: -- good job, sir.
> THE COURT: Mr. Hoffman, anything further on behalf of your clients?
> MR. HOFFMAN: We have nothing further. We also thank you, Your Honor.
> THE COURT: Very well. Thank you all. We are adjourned.

(Dk. 123, pp. 5-10).  As reflected in the record, Richard Miller entered his

appearance for QTI apparently for the limited purpose of the settlement

conference.  Mr. Miller never entered his appearance by signing and filing a

formal entry of appearance pursuant to D. Kan. Rule 5.1(d).  There is

nothing of record to suggest that Mr. Miller represents the plaintiff in any

matters after the settlement conference on July 24, 2007.

**MOTION TO STRIKE THE QTI'S RECENT FILINGS**

6

In their reply to the response filed for QTI by Lawrence Ruiz that opposed their motion to enforce the settlement agreement, the defendants note that Mr. Ruiz purports to appear as "pro se" counsel for the plaintiff corporation. The defendants ask the court to strike Mr. Ruiz's filings as he is not an attorney and, therefore, is incapable of representing QTI. (Dk. 121). The defendants also move the court to strike the motion for reconsideration filed by Mr. Ruiz on behalf of QTI for the same reasons that QTI is a corporation which must be represented by legal counsel and that Mr. Ruiz is not an attorney. (Dk. 119). In his pro se capacity, Lawrence Ruiz also moves to strike the defendants' motion to strike, (Dk. 122) and offers the following in explanation and justification for not having legal representation:

> It has been just recently that QTI found out that our third legal counsel did not Enter and Appearance at the last mediation just before the Pre-trial Status Hearing held at the Topeka Kansas Federal Court.
> Until a verdict is rendered in light of a favorable ruling giving Quality Trust Inc. the leisure Of having a fair hearing and reversing the Motion and Order, QTI cannot obtain favorable Counsel to continue this case. Therefore until such a time, Quality Trust Inc., under the Protection of the United States Government through the Miller Act relies on the merits that the United States is party to Quality Trust Inc., and unilaterally pursues righteousness and judgment in the court of law that justice may prevail.

(Dk. 122, pp. 2-3). Mr. Ruiz filed this last pleading on September 11, 2007,

and as of the date of this order, nearly four months later, no attorney has signed and filed a formal entry of appearance pursuant to D. Kan. Rule 5.1(d) on behalf of QTI.

The record demonstrates not only QTI's problems with keeping legal representation but the court's repeated explanations and admonitions for QTI to cure these problems. When QTI's first counsel, David Vogel, withdrew from this case, the magistrate judge instructed QTI as follows:

> The court notes that it is well settled that corporations and other business entities may appear in the federal courts only through licensed counsel. Therefore, the court expects plaintiff to act with all possible dispatch in obtaining new counsel to represent its interests in this matter. While the court declines to set a firm deadline for plaintiff to secure new counsel at this time, plaintiff should be mindful that any delay in obtaining new counsel that is ultimately found to be unreasonable could be grounds for dismissal of its case for failure to prosecute its claim pursuant to Fed. R. Civ. P. 41(b).

(Dk. 56, p. 2) (footnote omitted). In the footnote to this passage, the magistrate judge cited for the plaintiff's perusal the controlling case law that establishes a corporation may appear in federal court only through licensed counsel. *Id.* at n. 2. After a month passed and no counsel had appeared for the plaintiff, the magistrate judge set a firm deadline and cautioned that "any failure to comply with the deadline to obtain new counsel is virtually certain to result in the undersigned recommending to the trial judge that

8

defendants' motion to dismiss should be granted and plaintiff's claims in this matter be dismissed." (Dk. 64, pp. 3-4). Mr. Seaton entered his appearance for QTI within the deadline set by the magistrate judge. (Dk. 66)

       Mr. Seaton continued to represent QTI until May 29, 2007, when he orally motioned the court to withdraw from the case. The court granted the motion but directed Mr. Seaton to file a written motion in compliance with the court's local rules, which was done and granted on June 7, 2007. (Dks. 109 and 112). After that date, QTI did participate in a settlement conference without an attorney on July 9, 2007, but the magistrate judge ordered the plaintiff to have counsel enter an appearance on July 23, 2007. As quoted above from the transcript of the settlement conference on July 24, 2007, Richard Miller orally entered his limited appearance for QTI in the settlement conference that morning and was present throughout the settlement negotiations until they concluded that day with a settlement which was put on the record.

       Because Mr. Miller never formally entered his appearance pursuant to D. Kan. Rule 5.1(d), OTI has not been represented by legal counsel since Mr. Seaton's withdrawal except for the settlement

9

conference on July 24, 2007. Consequently, all of the plaintiff's filings of record after July 24, 2007, are signed by Lawrence Ruiz in a pro se capacity. Mr. Ruiz is the president of QTI, but he is not an attorney at law.

It is a "long-standing rule that a corporation must be represented by an attorney to appear in federal court." *Tal v. Hogan*, 453 F.3d 1244, 1254 (10th Cir. 2006) (footnote and citations omitted), *cert. denied*, 127 S. Ct. 1334 (2007). This means "a corporation cannot appear "through a non-attorney corporate officer appearing *pro se*." *Harrison v. Wahatoyas, LLC*, 253 F.3d 552, 556 (10th Cir. 2001); *see Medical Supply Chain, Inc. v. Neoforma, Inc.*, 2006 WL 2570312, at *2 (D. Kan. Aug. 7, 2006) ("[A] *pro se* individual may not represent a corporation." (citation omitted)), *appeal dismissed*, 508 F.3d 572 (10th Cir. 2007). Thus, pleadings filed by a non-attorney officer appearing *pro se* are not properly before the court and must be stricken. *See, e.g., Boilermaker-Blacksmith Nat'l. Pension Fund v. Chicago Boiler & Mechanical, Inc.*, 2006 WL 2228945, *1 (D. Kan. 2006); *Amoco Production Co. v. Aspen Group*, 25 F. Supp. 2d 1162, 1167 (D. Colo. 1998).

The court strikes Mr. Ruiz's *pro se* pleadings filed on behalf of QTI after July 24, 2007. Mr. Ruiz is not a party to this action who can file

pleadings on his own behalf.  Nor is Mr. Ruiz an attorney admitted to practice law who can file pleadings on behalf of QTI.  By federal statute, non-attorney pro se litigants cannot represent other pro se parties.  *See* 28 U.S.C. § 1654; *Stoner v. Santa Clara County Office of Educ.*, 502 F.3d 1116, 1126 (9th Cir. 2007) (Absent other statutory authority, this provision precludes pro se litigants from prosecuting federal court actions on behalf of others). Thus, under Rule 12(f), the materials filed by Mr. Ruiz are immaterial and impertinent, as he may not file pleadings or other matters with the court on behalf of himself or others in this case.  The court strikes the following filings:  Motion for Reconsideration (Dk. 118), Response (Dk. 120), and Reply/Motion to Strike (Dk. 122).

**MOTION TO ENFORCE SETTLEMENT AGREEMENT**

The defendants sent on July 26, 2007, a written settlement and release agreement embodying the terms of the oral settlement to Mr. Miller who had represented QTI at the settlement hearing.  On August 8, 2007, Mr. Miller contacted the defendants' counsel indicating that he had one proposed modification to the written settlement agreement but that Mr. Ruiz would not permit him to send the proposed modification because QTI no longer wanted to settle and would not execute any settlement agreement.

The defendants now seek to have the court either enforce the settlement agreement reached during the settlement conference of July 24, 2007, or enter default judgment against QTI on all of its affirmative claims and on all of QTI's defenses to the defendant Cajun's counterclaims.

"A trial court has the power to summarily enforce a settlement agreement entered into by the litigants while the litigation is pending before it." *United States v. Hardage*, 982 F.2d 1491, 1496 (10th Cir. 1993).[1]  A settlement agreement is a contract.  Thus, "[i]ssues involving the formation, construction and enforceability of a settlement agreement are resolved by applying state contract law." *United States v. McCall*, 235 F.3d 1211, 1215 (10th Cir. 2000).  The Kansas Supreme Court recognizes:

> It is an elemental rule that the law favors compromise and settlement of disputes, and generally, in the absence of bad faith or fraud, when parties enter into an agreement settling and adjusting a dispute, neither party is permitted to repudiate it. However, as an exception to the rule, it is well settled that a compromise settlement may be set aside on the ground of mutual mistake of the parties.

---

[1]While the existence of an agreement is a question of fact, *Reznik v. McKee*, 216 Kan. 659, 671-72, 534 P.2d 243, 254 (1975), an evidentiary hearing is necessary only when there is a dispute over material facts concerning the existence of the settlement agreement. *United States v. Hardage*, 982 F.2d at 1496.  In this case, no party has requested a hearing, and no proper filing has been made on behalf of the plaintiff QTI.  The record is devoid of any material factual dispute over the existence and terms of the settlement agreement.

*Krantz v. University of Kansas*, 271 Kan. 234, 241-242, 21 P.3d 561, 567 (2001). Nor will a court inquire into the merits of the underlying suit after a valid settlement absent fraud or bad faith. *Lewis v. Gilbert*, 14 Kan. App. 2d 201, 202, 785 P.2d 1367 (1990). That some party changes his or her mind about the settlement terms does not amount to allegations of fraud or bad faith. *Id.* at 203; *see Woods v. Denver Dept. of Revenue, Treasury Div.*, 45 F.3d 377, 378 (10th Cir. 1995) ("Ordinarily, a party who knowingly and voluntarily authorizes the settlement of her claims cannot avoid the terms of the settlement simply because she changes her mind." (citation omitted)).

To be an enforceable oral settlement agreement, there must be meeting of the minds on all essential terms and the parties must intend to be bound. *Dougan v. Rossville Drainage Dist.*, 270 Kan. 468, 487-88, 15 P.3d 338 (2000). The parties must have sufficiently defined the essential terms of the contract, for there to be a meeting of the minds. *Id.* at 488. Put another way, "[t]o constitute a meeting of the minds there must be a fair understanding between the parties which normally accompanies mutual consent and the evidence must show with reasonable definiteness that the minds of the parties met upon the same matter and agreed upon

13

the terms of the contract." *Steele v. Harrison*, 220 Kan. 422, 428, 552 P.2d 957, 962 (1976) (citations omitted).

Generally, "parties are free to bind themselves orally, and the fact that they contemplate later memorializing their agreement in an executed document will not prevent them from being bound by the oral agreement. However, if the parties intend not to be bound until the agreement is set forth in writing and signed, they will not be bound until then." *Ciaramella v. Reader's Digest Ass'n, Inc.*, 131 F.3d 320, 322 (2nd Cir. 1997) (citations omitted) (applying New York and federal common law). The same general rule of looking to the parties' intent is followed in Kansas:

> Where the intent of the parties is clear that they are negotiating with a definite understanding the terms of any contract are not fully agreed upon and a written formal agreement is contemplated, and no valid, enforceable contract is to exist until the execution of such an agreement, a binding contract does not come into existence in the absence of such execution.

*Weil & Associates v. Urban Renewal Agency*, 206 Kan. 405, Syl. ¶ 6, 479 P.2d 875 (1971). At the same time, contracting parties may intend to be bound by their oral expressions and consider other outstanding matters as nonessential:

> Certain matters may be expressly left to be agreed upon in the future,

> they may not be regarded by the parties as essential to their present agreement.  Such an expectation will not prevent an agreement already made from being an enforceable contract.  This may be true even though they expressly provide in their agreement that new matters, when agreed upon, shall be incorporated into their agreement and all shall be reduced to a formal written document or documents later.  The fact that the parties contemplate the subsequent execution of a formal instrument as evidence of their agreement does not necessarily imply they have not already bound themselves to a definite and enforceable contract.

*Phillips & Easton Supply Co., Inc. v. Eleanor International, Inc.*, 212 Kan. 730, 735, 512 P.2d 379, 384 (1973) (citations omitted).

        The transcript reflects that the parties agreed to the essential terms of their settlement with reasonable definiteness.  As summarized by the magistrate judge, the defendants had offered to settle and the plaintiff had agreed to accept the settlement on the following terms:  that Cajun abandons its counterclaim judgment against QTI and any claim for attorney's fees, that Cajun waives all claims against and obligations of QTI regarding its performance and warranties on this project, that Cajun pay QTI a specific amount, that all parties mutually and fully release each other and their agents, officers or employees from all claims, and that each side bears its own fees, costs and expenses. (Dk. 123, pp. 6-8).  The parties further "anticipated that this agreement shall be completed in writing, signed, and any payment to be made within ten business days." (Dk. 123,

15

p. 7). On behalf of QTI, Mr. Ruiz said he understood those terms and agreed to them as the settlement reached in the case. Mr. Sexton made a similar representation on behalf of the defendants.

Neither party alleges fraud nor bad faith with respect to this settlement agreement, and the court finds nothing of record to suggest fraud or bad faith in the representations made to the magistrate judge concerning the terms of the agreement or the parties' intentions to be bound by their settlement agreement. The parties plainly stated to the magistrate judge their immediate intentions to be bound to their settlement agreement. Neither party expressed any intention to have the settlement conditioned upon further negotiations, the resolution of additional terms, or the reduction of those terms to writing. The court understands the parties merely intended to reduce their agreement to writing and reflect the same in an executed document at a later date. Neither party indicated at any time that the settlement was not final until reduced to writing. Consequently, the court finds that the parties' oral settlement agreement is enforceable and that the terms of this agreement are as evidenced by the transcript (Dk. 123) of the settlement hearing on July 24, 2007, and by the settlement and release agreement attached to the defendants' motion (Dk.

116).

IT IS THEREFORE ORDERED that the defendants' motion to enforce the settlement agreement (Dk. 116) is granted, and the clerk of the court is directed to enter judgment dismissing this case with prejudice, as the case has been settled by the parties pursuant to the oral settlement agreement reached on July 24, 2007, and the terms of which are established and evidenced in accordance with the transcript of the settlement hearing (Dk. 123) and with the settlement and release agreement attached to the defendant's motion (Dk. 116);

IT IS FURTHER ORDERED that defendants' motion to strike (Dk. 119) the plaintiff's motion for reconsideration (Dk. 118) is granted, and the documents entitled Response to Defendants' Motion to Enforce Settlement (Dk. 120) and Plaintiff's Motion to Strike (Dk. 122), both of which were filed by Lawrence M. Ruiz in his *pro se* capacity, are also stricken pursuant to Fed. R. Civ. P. 12(f) for the reasons stated above.

Dated this 13th day of February, 2008, Topeka, Kansas.


       s/ Sam A. Crow
       Sam A. Crow, U.S. District Senior Judge